UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIZABETTA SCALERA,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, COSTCO WHOLESALE CLIFTON, JOHN DOES 1-10 (said names being fictitious designations) and ABC CORPORATIONS 1-10 (said names being fictitious designations),<br><br>Defendants. | Civil Action No. 21-14425<br><br>**OPINION**<br><br>June 28, 2024 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendant Costco Wholesale Corporation's ("Costco" or "Defendant") Motion for Summary Judgment. (ECF 38.) The Court reviewed all submissions made in support and in opposition to the motion (ECF 39; ECF 44) and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons stated below, Defendant's Motion is **GRANTED.**

I. **BACKGROUND**[1]

Elizabetta Scalera ("Plaintiff") alleges that on May 10, 2019, while at the Clifton, New Jersey Costco warehouse, she was caused to fall due to a crushed strawberry on the floor. (ECF 38-3, Def. SOMF ¶ 1.) Plaintiff alleges that she fell with "great force to the ground," sustaining

---

[1] The background is drawn from the Complaint, (ECF 1-1, "Compl."), Defendant's Motion for Summary Judgment (ECF 38, "Def. Br."), Plaintiff's opposition (ECF 39, "Pl. Opp."), both parties' submissions regarding undisputed material facts (ECF 38-3; "Def. SOMF"); (ECF 39, "Pl. SOMF."); and documents integral to or relied upon by the Complaint.

injuries which necessitated "extensive medical treatment," caused her "great pain and suffering," "significant medical expenses," "incapacitated her from pursuing her usual employment," and "exacerbated any condition that she may have had; resulting in permanent disabilities and/or damages." (ECF 1-1, Compl. ¶¶ 10-11.)

The matter initially commenced on May 20, 2021 in the Superior Court of New Jersey, Law Division, Passaic County. Defendant first received a copy of the Complaint on or about July 13, 2021 when it was served upon the subject warehouse. On July 30, 2021, Defendant removed this action to this Court pursuant to 28 U.S.C. § 1441. On October 27, 2023, Defendant filed the instant Motion for Summary Judgment.

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact [and] the moving party is entitled to a judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

2

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

### III.  ANALYSIS

Typically, to prevail on a premises-liability claim in New Jersey[2] where a business invitee is injured on a business's premises, the business is liable in negligence to the invitee if the invitee proves that the business had actual or constructive knowledge of the dangerous condition that

---

[2] The parties and the Court agree that New Jersey law applies.

3

caused the accident. *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. 2003); *Prioleau v. Kentucky Fried Chicken, Inc.*, 122 A.3d 328, 335 (N.J. 2015) (citations omitted); *Bozza v. Vornado, Inc.*, 200 A.2d 777, 779 (N.J. 1964). However, under the mode-of-operation doctrine, a business invitee who is injured is entitled to an inference of negligence and is relieved of the obligation to prove that the business owner had actual or constructive notice of the dangerous condition. *Prioleau*, 122 A.3d at 248. After a finding that the mode-of-operation doctrine applies, the inference of negligence shifts the burden to the defendant, who can "negate the inference by submitting evidence of due care." *Nisivoccia*, 818 A.2d at 317. This means that the defendant can avoid liability by showing that it did "all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed." *Id*. Therefore, the Court's threshold inquiry hinges on whether the mode-of-operation doctrine is applicable here.

    A. **Mode-of-operation Doctrine**

Mode-of-operation is a judicially created rule that alters a plaintiff invitee's burden of proof in certain premises liability negligence actions. *Jeter v. Sam's Club*, 271 A.3d 317, 324 (N.J. 2022) (citing *Prioleau*, 122 A.3d at 335). In applying the mode-of-operation-doctrine, the New Jersey Supreme Court has found it appropriate to relieve a plaintiff of the burden of proving actual or constructive notice of a dangerous condition "in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." *Nisivoccia*, 818 A.2d at 316. Thus "[t]he rule gives rise to a rebuttable inference that the defendant is negligent, and obviates the need for the plaintiff to prove actual or constructive notice." *Prioleau*, 122 A.3d at 335. Indeed, the mode-of-operation rule is a "special application of foreseeability principles,"

4

developed in response to the inherent risks associated with "self-service" businesses. *Prioleau*, 122 A.3d at 330.

Generally, the self-service setting has been described as an environment "in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk." *Id*. The mode-of-operation rule was developed in relation to businesses that require customers to serve themselves, such as using self-service beverage dispensers or self-selecting produce from bins. *Id*. (discussing *Bozza*, 200 A.2d at 780 (customer slipped on sticky substance in self-service cafeteria area)); *Wollerman v. Grand Union Stores, Inc.*, 221 A.2d 513, 514 (N.J. 1966) (customer slipped on a green bean, which was sold from an open bin on a self-service basis); *Nisivoccia*, 818 A.2d at 315 (customer slipped on a grape which was being displayed in an open-top, vented plastic bag that permitted spillage).

"Because the long-standing mode-of-operation rule had been expanded over the years,[3] the New Jersey Supreme Court in *Prioleau* reestablished the rule's narrow scope by deriving four principles from its survey of cases that have considered whether the mode-of-operation doctrine applies:

> (1) First, the mode-of-operation doctrine has never been expanded beyond the self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk. The distinction drawn by these cases is sensible and practical. When a business permits its customers to handle products and equipment, unsupervised by employees, it increases the risk that a dangerous condition will go undetected and that patrons will be injured. Thus, the mode-of-operation rule is not a general rule of premises liability, but a special application

---

[3] The New Jersey Supreme Court noted, "The mode-of-operation charge that has been in use since 1970, Model Jury Charge (Civil) 5.20F(10), neither reflects recent jurisprudence regarding the rule nor clearly explains the purpose and application of the rule. We therefore urge the Model Civil Jury Charge Committee to review the model charge." *Prioleau*, 122 A.3d at 339.

5

of foreseeability principles in recognition of the extraordinary risks that arise when a defendant chooses a customer self-service business model.

(2) Second, the rule applies only to accidents occurring in areas affected by the business's self-service operations, which may extend beyond the produce aisle of supermarkets and other facilities traditionally associated with self-service activities.

(3) Third, the mode-of-operation rule is not limited to cases in which customer negligence created the dangerous condition; it also applies to self-service settings in which the injury may have resulted from the manner in which employees handled the business's products or equipment, or the inherent qualities of the merchandise itself. Accordingly, the mode-of-operation charge may be given even in the absence of evidence that the carelessness of the plaintiff, or another patron, gave rise to the dangerous condition.

(4) Fourth, if the mode-of-operation rule applies, it affects the parties' burdens of proof in two respects. The rule relieves the plaintiff of the burden of proving actual or constructive notice of the dangerous condition. It also gives rise to an inference of negligence, shifting the burden of production to the defendant, who may avoid liability if it shows that it did all that a reasonably prudent man would do in the light of the risk of injury the operation entailed. Thus, if the rule applies in a particular case, it substantially alters the ordinary allocation of the burdens between the parties.

*Lenherr v. Morey Org., Inc.*, 153 F. Supp. 3d 662 (D.N.J. 2015) (discussing *Prioleau*, 122 A.3d at 338-39 (citations omitted)).

### 1. Applicability of the "Mode of Operation" Doctrine

It is important to note that the mode-of-operation doctrine's application is limited. *See Prioleau*, 122 A.3d at 333. There must be a "nexus between [the] self-service components of the defendant's business and a risk of injury in the area where the accident occurred." *Id.* at 338. That nexus depends, not on an individual employee's conduct, but on whether "the [defendant's mode of operation] encourages self-service on the part of the customer, which can reasonably and foreseeably create a risk of harm to the customer." *Id.* (citation omitted).

In other words, did the defendant engage in a particular business practice that created an implicit or inherent danger likely to cause injury? *See id.*

Plaintiff contends that the mode-of-operation doctrine is appliable here because Plaintiff satisfies "all three prongs" of the mode-of-operation test.[4] (ECF 39, Pl. Opp. at 2-3.) Specifically, Plaintiff argues that the first two elements are satisfied based upon the holding in *Prioleau*; that is, the Defendant operated as a self-service store and "considering Plaintiff fell on a strawberry . . . there is no question the accident took place in an area that was affected by the store's self-service operations." (*Id*. at 4.) Further, Plaintiff contends the third element is satisfied because unlike the Defendant in *Jeter*, Defendant here failed to undertake "additional safeguarding measures, i.e., taping the already sealed clamshell containers to protect the public." (*Id*. at 5.) Finally, Plaintiff contends that "Defendant's method of presentation of the strawberries created a risk of harm [because the packages] were stacked, as opposed to displayed in single packages on a table or shelf." (*Id*.)

The Court disagrees with Plaintiff's argument and concludes that the mode-of-operation doctrine is inapplicable in this case, relying on the New Jersey Supreme Court's reasoning and holding in *Jeter* in arriving at this conclusion. In *Jeter*, the plaintiff slipped and fell on grapes on the floor of Sam's Club. *Jeter,* 271 A.3d at 319-20. Sam's Club argued that the mode-of operation doctrine was not applicable because it sold the grapes in "closed, sealed packages to avoid unsafe conditions caused by loose grapes." *Id*. at 320. The plaintiff disagreed, arguing the "store knew customers were negligently opening the packages of grapes" and that "packages pop open all the time," are "stacked all over each other," and differ from "toothpaste or something wrapped in

---

[4] For the mode of operation rule to apply: (1) the defendant operated a self-service business, (2) the location of the incident or fall bore a relationship to the self-service component of the store, and (3) there existed a nexus between the dangerous condition and the defendant's mode of operation. *Jeter*, 271 A.3d at 322-25.

cellophane . . . where it would be very exceptional that any of it would get [out] of it." *Id*. To bolster the argument for applicability of the mode-of-operation doctrine the Plaintiff provided testimony that she had observed loose grapes "several times" during her monthly trips to Sam's Club, and further, that she observed other customers opening the clamshell packages in the store to taste grapes "plenty of times." *Id*. Further, there was also testimony from Sam's Club that the store was aware that its customers would open the grape containers on occasion to taste the grapes, but that such actions were "frowned upon." *Id*. at 320-21. The trial court found that the mode-of-operation rule did not apply because the store "elected to sell grapes, not loosely, but in containers, that will certainly be less of a danger," despite the store's knowledge that customers opened them from time-to-time. *Id*. at 321-22. The Appellate Division affirmed the trial court, finding that the plaintiff "'failed to establish a nexus between the dangerous condition and defendant's mode of operation' – the rule's third element." *Id.* at 322 (quoting *Jeter v. Sam's Club*, No. A-0716-19, 2021 N.J. Super. Unpub. LEXIS 919, at *9 (N.J. Super. Ct. App. Div. May 17, 2021)). Ultimately, the New Jersey Supreme Court affirmed the lower courts and found the doctrine inapplicable.

Specifically, the analysis in *Jeter* hinged on "whether packaging of the grapes in closed clamshell containers makes it reasonably foreseeable that grapes will drop on the floor." 271 A.3d at 327. Through its analysis, the court found it compelling that Sam's Club "elected not to sell grapes in open-top, vented plastic bags" and instead packaged and sold the grapes in "sealed clamshell containers" with no intention of customers or employees handling the grapes. *Id*. In so doing, the court found no nexus between plaintiff's fall on grapes and Sam's Club's self-service sale of grape containers. *Id*.

Here, Defendant contends that the present facts of this case are analogous to the facts in *Jeter*. (ECF 38-4, Def. Br. at 14.) The Court agrees. Like Sams Club's mode-of-operation in *Jeter*,

8

it was not Costco's mode-of-operation to allow the handling of loose strawberries that could fall to the floor. Rather, strawberries were packaged in clamshell containers such that customers were only intended to handle the secure packaging. (ECF 38-3, Def. SOMF ¶¶ 30-33; ECF 44, Def. Reply at 11.) While Plaintiff attempts to distinguish the facts here from *Jeter* by arguing that Costco did not also tape their clamshell containers closed (as was done in *Jeter*), the distinction is unavailing. The court in *Jeter* focused on whether "the packaging of grapes in closed clamshell containers makes it reasonably foreseeable that grapes will drop on the floor." *Jeter*, 271 A.3d at 327 (citing *Prioleau*, 122 A.3d at 338.) While the court in *Jeter* found that taping the clamshell containers proved to be a method which posed "virtually no chance of spillage," the taping of the containers was not the lynchpin of the court's analysis. Instead, the focus of the *Jeter* court was the chance of spillage "during the ordinary, permissible customer handling [of the packaging.]" *Jeter*, 271 A.3d at 327. Here, testimony of Ms. Wayne at deposition revealed that in over 20 years of experience working at this warehouse, she had never seen strawberries on the floor. (ECF 38-3, Def. SOMF ¶ 27; ECF 38-6, Exhibit C at 21:22-5.) Further, Plaintiff herself also testified that in over 25 years of going to this warehouse, she had never seen strawberries on the floor. (ECF 38-3, Def. SOMF ¶ 28; ECF 38-6, Exhibit B at 20:6-15.) Based upon this testimony, it appears Defendant's practice of using clamshell containers to package strawberries has been very effective in reducing the chance of spillage even without the use of tape.

Based on the foregoing, the Court concludes that the mode-of-operation doctrine does not apply here because the Court finds no nexus between Plaintiff's fall on the strawberries and Costco's self-service sale of strawberry containers.

### B. Actual or Constructive Notice

Because Plaintiff cannot avail herself of the mode-of-operation doctrine, she must show that Costco had actual or constructive notice of the spilled strawberries. *Garcia v. Walmart, Inc.*, No. 17-3118, 2021 WL 754006, at *5 (D.N.J. Feb. 26, 2021.) When an invitee is injured on a business owner's property, the business owner "is liable for such injuries if the owner had actual or constructive knowledge of the dangerous condition that caused the accident." *Jeter*, 271 A.3d at 324. An invitee seeking to hold the business owner accountable for negligence "must prove, as an element of the cause of action," that the business owner had actual or constructive knowledge of the hazard. *Prioleau*, 122 A.3d at 335 (quoting *Nisivoccia*, 818 A.2d at 316). Absence of actual or constructive knowledge is "fatal" to a plaintiff's premises liability claim. *Arroyo v. Durling Realty, LLC*, 78 A.3d 584, 586 (N.J. Super. Ct. App. Div. 2013). Critically, "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" *Arroyo*, 78 A.3d at 586-87. (alteration in original) (citation omitted). Here, there is no record evidence that Costco had actual knowledge of the hazard that caused Scalera to fall. Indeed, there is no surveillance video, or any other evidence offered by Plaintiff that any Costco employee observed the strawberry in question. It is appropriate, then, that the argument here is confined to constructive notice and the sole issue is whether Plaintiff has put forward sufficient evidence to create a genuine dispute of material fact on whether Costco had constructive knowledge of the hazard.

**1. Constructive Notice**

A business owner has constructive notice "when the condition existed for such a length of time as reasonably to have resulted in knowledge and correction had the [business owner] been reasonably diligent." *Jeter*, 271 A.3d at 324 (quotation marks omitted) (quoting *Troupe v. Burlington Coat Factory Warehouse Corp.*, 129 A.3d 1111, 1114 (N.J. Super. Ct. App. Div.

2016)). "Constructive notice can be inferred in various ways," such as eyewitness testimony or from "[t]he characteristics of the dangerous condition giving rise to the slip and fall." *See Choi v. Costco Wholesale Corp.*, No. 22-3329, 2024 WL 658972, at *4 (3d Cir. Feb. 16, 2024) (quoting *Troupe*, 129 A.3d at 1114). However, "the mere existence of an alleged dangerous condition is not constructive notice of it." *Jeter*, 271 A.3d at 324 (quoting *Arroyo*, 78 A.3d at 586).

Typically, constructive notice is a question of fact for the jury, but it may be appropriate for summary judgment when no reasonable juror could conclude otherwise. *See Melendez v. Target Corp.*, No. 18-09405, 2022 WL 1617709, at *9 (D.N.J. May 23, 2022) (citation omitted). In most cases, the length of time that the dangerous condition was present is key to determining whether constructive notice existed. *Garcia*, 2021 WL 754006, at *5. But a plaintiff who can point to other factors that should have made the defendant aware of the dangerous condition can also suffice. *See, e.g.*, *Bezglasnaya v. Trump Ent. Resorts, Inc.*, No. 11-564, 2013 WL 796308, at *4 (D.N.J. Mar. 4, 2013) (denying summary judgment and concluding that the plaintiff had presented a fact question as to whether the defendant had constructive notice of a dangerous condition when employees were working nearby, and a hostess walked by the location where the fall occurred). Notwithstanding, it remains Plaintiff's burden to prove Defendant had actual or constructive knowledge of the alleged dangerous condition. *See Nisivoccia*, 818 A.2d at 317.

The circumstances in *Troupe* are instructive to the current circumstances. In *Troupe*, the plaintiff slipped and fell on a berry located on the floor of the defendant clothing store. *Troupe*, 129 A.3d at 1113. The court noted the plaintiff did not provide any evidence showing how long the berry remained on the floor, or that any employee should have known the berry was there. *Id.* at

11

1114. Therefore, the court ruled the defendant had no constructive notice regarding the berry on the floor. *Id.* at 1115-16.

Here, as in *Troupe*, the record is devoid of any evidence the defendant had constructive notice of strawberries on the floor in any location in the store at any time. Plaintiff has not offered any evidence with respect to how long the strawberry allegedly existed prior to the Plaintiff's fall. Indeed, both Plaintiff and Dr. Wayne Nolte ("Dr. Nolte") testified that they do not know how long the condition existed prior to Plaintiff's incident. (ECF 38-3, Def. SOMF ¶¶ 3, 47; ECF 38-6, Exhibit B at 23:8-10; ECF 38-6, Exhibit J at 52:17-53:1, 72:14-16.) Plaintiff similarly admitted to her lack of knowledge regarding the duration of the alleged hazard in her statement of material facts. (ECF 39, Pl. SOMF ¶ 3.) Furthermore, Plaintiff has proffered no evidence showing defendant's employees knew or should have known before plaintiff's fall that there was a strawberry on the floor at the location of the incident.[5] Moreover, there was no evidence about how long the strawberry was there, such as eyewitnesses or any aged characteristics of the strawberry, to indicate the amount of time defendant had to discover and remedy the situation.[6] The absence of evidence of "actual or constructive notice . . . is fatal to plaintiff's claims

---

[5] Defendant submitted the certification of Alfreda Taylor ("Ms. Taylor"), a member services employee at the Clifton, New Jersey Costco warehouse on the date the incident in question took place. In her certification, Ms. Taylor explained that Floor-Walk inspections are hourly inspections of the warehouse wherein a Costco employee conducts an inspection of the entire warehouse. (ECF 38-6, Exhibit D. ¶ 3.) Ms. Taylor certified that on the day of Plaintiff's incident, Ms. Taylor "conducted a Floor-Walk inspection on May 10, 2019 that started at 3:00pm and ended at 3:30pm." (*Id.* ¶ 4) During that inspection, Ms. Taylor certified that she inspected the produce cooler by physically entering the cooler, searching for potentially hazardous conditions, and checking the cooler temperature. (*Id.* ¶¶ 5-6.) Further, this cooler inspection was completed just before she completed her inspection at 3:30pm, as the produce cooler was the last stop of her Floor-Walk inspection route. (*Id.* ¶¶ 7-9.) Finally, Ms. Taylor certified that during that inspection just before 3:30pm on the day in question, there was nothing on the floor and if there had been anything she would have "immediately cleaned it or stayed with it and would not have left it unattended." (*Id.* ¶ 10.) In her opposition, Plaintiff described Ms. Taylor's certification as "self-serving" and "suspect[,]" yet Plaintiff failed to introduce any explanation or persuasive argument as to why Ms. Taylor's certification should not be relied upon by this Court. (ECF 39, Pl. Opp. at 6.) Indeed, through her sworn certification, Ms. Taylor described her Floor-Walk on the day in question, the description of which is corroborated by the Daily Floor-Walk Inspection document which notes inspection times contemporaneous with each inspection. (ECF 38-6, Exhibits A, E.) Critically, Ms. Taylor's certification establishes that just prior to the incident, Ms. Taylor inspected the produce cooler, there was nothing on the floor, and there is no evidence from the Plaintiff to rebut these facts.

of premises liability." *Arroyo*, 78 A.3d at 586-87; *see also Brown v. Racquet Club of Bricktown*, 471 A.2d 25, 30-31 (N.J. 1984).

Based on the foregoing, Plaintiff has not proffered any evidence that would permit a jury to reasonably infer how long the hazardous condition was on the floor. Even assuming Plaintiff established there was a strawberry on the floor of the produce cooler, the mere "[e]xistence of an alleged dangerous condition is not constructive notice of it." *Arroyo*, 78 A.3d at 584 (quoting *Sims v. City of Newark,* 581 A.2d 524, 529 (N.J Super. Ct. Law Div. 1990)). Even viewed in a light most favorable to the Plaintiff, there is no genuine issue as to whether Defendant had actual or constructive notice of the presence of the strawberry in the produce cooler. The absence of such notice is fatal to Plaintiff's claims of premises liability. *Nisivoccia,* 818 A.2d at 317; *Brown*, 471 A.2d at 30-31.

As a result, Defendant's Motion for Summary Judgment is **GRANTED**.[7]

---

[6] Included as Exhibit C to Defendant's motion is the deposition testimony of Natolia Cleopatra Wayne ("Ms. Wayne.") Ms. Wayne testified regarding Costco's inspection procedures, specifically, the porter procedures which work in tandem with the Floor-Walk inspections ensuring that the "constant" patrols by porters are in addition to the once per hour Floor-Walk inspections. (*Id*. at 28:10-20; *see also* ECF 38-6, Exhibit D ¶ 3; ECF 44, Def. Rep. at 5.) In her opposition, Plaintiff calls into question the "veracity" of Ms. Wayne's testimony and states that "like Taylor, Wayne's testimony does not resolve all questions of material fact as to Defendant's purported lack of notice." (ECF 39, Pl. Opp. at 6-7.) Plaintiff's assessment of Ms. Wayne's testimony is similarly unfounded. Plaintiff claims, in part, that Defendant had constructive notice based upon the fact that Defendant "hired porters to clean spills in the produce area [and this] establishes knowledge of a known risk." (ECF 38-6, Exhibit C at 23:4-15.) However, the fact that Costco had near round-the-clock porters and Floor-Inspections shows that a hazardous condition likely could not have existed for a long period of time, and this is further bolstered by the sworn certification of Ms. Taylor and the aforementioned Floor-Walk Inspection document. (*See* ECF 38-6, Exhibit D; *see also* ECF 38-6, Exhibits A, E.) Furthermore, Ms. Wayne's testimony that she has seen produce on the floor before is a red herring. (ECF 38-6, Exhibit C at 22:1-7.) This case is about the potential hazard strawberries may or may not have caused, not about produce generally in Costco. As it pertains to strawberries, Ms. Wayne testified at deposition that she has not seen strawberries on the floor in her 20 years of experience working at Costco. (ECF 38-6, Exhibit C at 21:22-5.)

[7] Because the issue regarding actual and/or constructive notice is dispositive, and the absence of actual or constructive knowledge is "fatal" to plaintiff's premises liability claim, the Court declines to address the remainder of the arguments in Defendant's motion.

C.  **CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF 38) is **GRANTED.** An appropriate order follows.

>  */s/ Jamel K. Semper*
>  **HON. JAMEL K. SEMPER**
>  **United States District Judge**

Orig:  Clerk
cc:    Leda D. Wettre, U.S.M.J.
       Parties